# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BRYANT BUESCHER, CLARENCE IANNINE, CLARESSA WALLACE, and CRAIG COOK, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>BRENNTAG NORTH AMERICA, INC., BOARD OF DIRECTORS OF BRENNTAG NORTH AMERICA, INC., and BRENNTAG INVESTMENT AND OVERSIGHT COMMITTEE,<br>      Defendants. | **CIVIL ACTION NO**.:<br>5:20-cv-00147 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF <u>CLASS NOTICE AND SCHEDULING OF A FAIRNESS HEARING</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..........................................2

    A.      Description of the Action and Summary of the Litigation ......................2

    B.      Investigation of Claims and Discovery...................................................4

    C.      Settlement Negotiations ..........................................................................6

    D.      The Proposed Settlement ........................................................................7

    E.      Reasons for the Settlement......................................................................7

    G.      Proposed Timetable ................................................................................9

III.    THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR
    APPROVAL .......................................................................................................9

    A.      The Governing Law ................................................................................9

    B.      The Settlement Satisfies the *GMC* Factors Underscoring its Fairness .................10

    C.      The Third Circuit's *Girsh* Factors are also Satisfied ...........................12

        1.      The Complexity, Expense, and Likely Duration of the Litigation ............12

        2.      The Reaction of the Class to the Settlement ...............................14

        3.      The Stage of the Proceedings and the Amount of Discovery
            Completed ...............................................................................14

        4.      The Risks of Establishing Liability and Damages .....................14

        5.      The Risks of Maintaining the Class Action through Trial .........16

        6.      The Ability of the Defendants to Withstand a Greater Judgment.............16

        7.      The Range of Reasonableness of the Settlement Fund in Light of
            the Best Possible Recovery and in Light of all Attendant Risks of
            Litigation...............................................................................17

IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED....................19

    A.      The Proposed Notice Plan Meets the Requirements of Due Process....................19

    B.      Description of the Notice Plan...............................................................19

V.     CLASS CERTIFICATION IS APPROPRIATE ................................................................21

       A.     The Proposed Class Satisfies the Requirements of Rule 23(a)............................22

              1.     Numerosity....................................................................................................22

              2.     Commonality.................................................................................................22

              3.     Typicality .....................................................................................................24

              4.     Adequacy .....................................................................................................25

       B.     The Proposed Class Meets the Requirements of Rule 23(b)(1)...........................26

       C.     Capozzi Adler Should be Appointed Counsel for the Class ................................28

VI.    CONCLUSION....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................21

*In re: AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)...........................................................................23

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)....................................................................22, 23, 24

*Brieger v. Tellabs, Inc.*,
    659 F. Supp. 2d 967 (N.D. Ill. 2009) ..............................................................2, 15

*In re: Budeprion XL Marketing & Sales Litig.*,
    No. 09-md-2107, 2012 WL 2527021 (E.D. Pa. July 2, 2012)..............................26

*In re: Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................................12, 15

*In re: Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
    286 F.R.D. 621 (W.D. Okla. 2012)..................................................................29, 30

*Dann v. Lincoln Nat'l Corp.*,
    No. 08-cv-5740 (E.D. Pa. June 4, 2009) ..........................................................29

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012)...............................................................................25

*DiFelice v. U.S. Airways, Inc.*,
    436 F. Supp. 2d 756 (E.D. Va. 2006) ..............................................................15

*Donovan v. St. Joseph County Sheriff*,
    No. 11-cv-133, 2012 WL 1601314 (N.D. Ind. May 3, 2012)..............................28

*In re: First American Corp. ERISA Litig.*,
    No. 07-cv-01357 (C.D. Cal. Feb. 1, 2008) ......................................................29

*In re: Flonase Antitrust Litig.*,
    No. 08-cv-3149, 2013 WL 2915606 (E.D. Pa. June 14, 2013)...................10, 14, 18

*Furstenau v. AT&T Corp.*,
    No. 02-cv-5409, 2004 WL 5582592 (D.N.J. Sept. 3, 2004)................................28

*In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)............................................................................ passim

*Girsh v. Jepson*,
  521 F.2d 153 (3d. Cir. 1975)......................................................................... passim

*Harris v. First Regional Bancorp*,
  No. 10-cv-07164 (C.D. Cal. Jan. 6, 2011) ...............................................................29

*Harry M. v. PA Dept. of Public Welfare*,
  No. 10-cv-922, 2013 WL 1386286 (M.D. Pa. Apr. 4, 2013).............................9, 19

*In re: Honeywell Int'l ERISA Litig.*,
  No. 03-cv-1214, 2004 WL 3245931 (D.N.J. Sept. 14, 2004)................................25

*In re: Honeywell Int'l Sec. Litig.*,
  211 F.R.D. 255 (D.N.J. 2002)...........................................................................24

*In re: Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000)..................................................................... passim

*In re: Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)......................................................................19, 28

*In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*,
  No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ...............................21

*Kolar v. Rite Aid Corp.*,
  No. 01-cv-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) ............................27

*Landgraff v. Columbia/HCA Healthcare Corp.*,
  No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ..........................15

*In re: Linerboard Antitrust Litig.*,
  321 F. Supp. 2d 619 (E.D. Pa. 2004) ...................................................................17

*In re: M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
  270 F.R.D. 45 (D. Mass. 2010)...........................................................................12

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985).............................................................................................27

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007)...............................................................23, 24, 27

*In re: Merck & Co., Inc., Securities, Derivative & ERISA Litig.*,
  MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009)...............................22, 28

*In re: Merck & Co., Inc., Vytorin ERISA Litig.*,
No. 08-cv-1974 (D.N.J. June 22, 2012) ............................................................21

*In re: Merck & Co. Vytorin ERISA Litig.*,
No. 08-cv-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ..............................11, 14, 15

*Moore v. Comcast Corp.*,
268 F.R.D. 530 (E.D. Pa. 2010) .....................................................................22

*Moore v. Simpson*,
No. 96-cv-2971, 1997 WL 570769 (N.D. Ill. Sept. 10, 1997) ..............................24

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ....................................................................................19

*In re: National City Corp. Securities, Derivative and ERISA Litig.*,
No. 08-cv-70000 (N.D. Ohio May 12, 2008) .......................................................29

*Nelson v. Hodowal (IPALCO)*,
512 F.3d 347 (7th Cir. 2008) .........................................................................15

*New Directions Treatment Servs. v. City of Reading*,
490 F.3d 293 (3d Cir. 2007)...........................................................................25

*In re: Pet Food Products Liability Litig.*,
629 F.3d 333 (3d Cir. 2010)......................................................................21, 26

*In re: Processed Egg Products Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012).......................................................................29

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283, 319 (3d Cir. 1998)............................................................... passim

*In re: Qwest Sav. and Inv. Plan ERISA Litig.*,
No. 02-RB-464 (CBS) (D. Colo. Sept. 27, 2004) ..................................................23

*In re: R.H. Donnelley ERISA Litig.*,
No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010)........................................................29

*In re: Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003).................................................................15

*Ripley v. Sunoco, Inc.*,
287 F.R.D. 300 (E.D. Pa. June 26, 2012) .......................................................23, 25

*In re: Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009).......................................................................16, 27

*In re: Schering-Plough Corp. Enhance ERISA Litig.*,
   No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012)........................................... passim

*In re: Schering-Plough Corp. Enhance ERISA Litig.*,
   No. 08-cv-1432 (D.N.J. Feb. 17, 2012) ....................................................................21

*In re: Schering-Plough/Merck Merger Litig.*,
   No. 09-cv-1099, 2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...........................................14, 25

*Shane, et al., v. Amcore Financial, Inc., et al.*,
   No. 10-cv-50089 (N.D. Ill. Mar. 24, 2011)................................................................29

*Shane, et al., v. Amcore Financial, Inc., et al.*,
   No. 10-cv-50089 (N.D. Ill. May 17, 2013) ...............................................................20

*Sheinberg v. Sorensen*,
   606 F.3d 130 (3d Cir. 2010)............................................................................26, 29

*In re: SLM Corp. ERISA Litig.*,
   No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008).................................................................29

*Smith v. Krispy Kreme Doughnut Corp.*,
   No. 05-cv-00187, 2007 WL 119157 (N.D.N.C. Jan. 10, 2007)...........................................13

*Stanford v. Foamex, L.P.*,
   263 F.R.D. 156 (E.D. Pa. 2009) .........................................................................22

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001)............................................................................22

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)...........................................................................17, 18

*In re: SunTrust Banks, Inc., ERISA Litig.*,
   No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) .................................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011)..................................................................................23

*Walsh v. Great Atl. & Pac. Tea Co.*,
   726 F.2d 956 (3d Cir. 1983)...............................................................................9

*In re: Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)......................................................................... passim

*In re: Imprelis Herbicide Marketing, Sales Practices and Products Liability Litig.*,
   No. 11-md-2284, 2013 WL 504857 (E.D. Pa. Feb. 12, 2013)................................................21

**STATUTES**

28 U.S.C. § 1715.............................................................................................................9

29 U.S.C. § 1001.............................................................................................................1

**RULES**

Rule 23(a)...........................................................................................16, 21, 22, 26

FED. R. CIV. P. 23(a)(1)...................................................................................22

FED. R. CIV. P. 23(a)(2)...........................................................................22, 23, 24

FED. R. CIV. P. 23(a)(3)...................................................................................24

FED. R. CIV. P. 23(a)(4)...........................................................................25, 26, 30

FED. R. CIV. P. 23(b)...............................................................16, 21, 26, 27

FED. R. CIV. P. 23(b)(1)...........................................................16, 26, 27, 28

FED. R. CIV. P. 23(b)(1)(A).......................................................................27, 28

FED. R. CIV. P. 23(b)(1)(B).......................................................................27, 28

FED. R. CIV. P. 23(c)(2)...................................................................................19

FED. R. CIV. P. 23(e)...................................................................................20

FED. R. CIV. P. 23(g)...........................................................................26, 28, 29, 30

Plaintiffs Bryant Buescher, Clarence Iannine, Claressa Wallace and Craig Cook (collectively "Named Plaintiffs" or "Plaintiffs"), participants in the Brenntag USA Profit Sharing Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice and Scheduling of a Fairness Hearing ("Motion for Preliminary Approval"), and respectfully move this Court for an Order (1) granting preliminary approval to the proposed Settlement Agreement entered into with Defendants[1] (the "Settlement" or "Settlement Agreement"),[2] (2) preliminarily certifying the Settlement Class, (3) approving the form and manner of providing notice of the Settlement to the proposed Settlement Class (the "Notice Plan"), and (4) scheduling of a Fairness Hearing.

## I.    INTRODUCTION

The Parties have reached a proposed Settlement of this case brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*., (ERISA) for a monetary payment of $2,300,000.00 (the "Class Settlement Amount") that will provide substantial benefits to and resolve all claims asserted by Plaintiffs in this Action on behalf of the Plan and Settlement Class. In light of the facts, governing law, and the substantial risks of continued litigation, Class Counsel[3] believes the proposed Settlement is fair, reasonable, adequate and in the best interest of the proposed Settlement Class as it provides for an immediate and meaningful recovery.

---

[1] "Defendants" refers, collectively, to Brenntag North America, Inc. ("Brenntag"), Board of Directors of Brenntag ("Board"), and Brenntag Investment and Oversight Committee ("Committee") (collectively, the "Defendants"). Plaintiffs and Defendants are collectively referred to as the "Parties."

[2] The Settlement Agreement, attached to the Declaration of Mark K. Gyandoh ("Gyandoh Decl.") as Exhibit 1, itself has several exhibits. These exhibits include the Preliminary Approval Order proposed by all parties to the Settlement Agreement, which is appended to the Settlement Agreement as Exhibit C, and the proposed Final Approval Order and Judgment appended to the Settlement Agreement as Exhibit D. The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein. Thus, all capitalized terms not otherwise defined in this Memorandum shall have the same meaning as ascribed to them in the Settlement Agreement.

[3] "Class Counsel" means Capozzi Adler, P.C.

Plaintiffs have vigorously prosecuted this Action.  While the Parties reached the Settlement before Defendants filed a motion to dismiss the Amended Complaint, there is no doubt that lawsuits of this type brought pursuant to the ERISA face significant litigation and trial risks.  The undersigned tried an analogous case to verdict – *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009) – and is particularly qualified to realistically evaluate the risks of continued litigation.  The Parties agreed to the proposed Settlement only after arm's length negotiations by experienced counsel on both sides under the auspices of an experienced mediator.  Resolving this case at this juncture allows the Parties to avoid continued and costly litigation that would deplete available insurance coverage and could result in a judgment less than the recovery under the Settlement Agreement, or no recovery at all.

Accordingly, as set forth below, all prerequisites for preliminary approval of the Settlement and certification of a Settlement Class are satisfied.  As such, Plaintiffs' Motion for Preliminary Approval should be granted and Notice should be given to the Settlement Class. The proposed Notice Plan, which consists of individualized direct-mail and a settlement website, as described herein, is consistent with the forms of notice approved in directly analogous actions and satisfies due process concerns.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Description of the Action and Summary of the Litigation

Plaintiffs commenced litigation with the filing of *Buescher, et al., v. Brenntag North America, Inc., et al.,* on January 8, 2020, in the United States District Court for the Eastern District of Pennsylvania.  By agreement, Plaintiffs amended the Complaint to, *inter alia*, remove the individual defendants on March 20, 2020 and incorporate additional information obtained by Plaintiffs through informal discovery with Defendants.  (Doc. 17.)

In the Amended Complaint, Plaintiffs alleged in Count I that Brenntag and the Committee Defendants breached their fiduciary duties to the Plan, Plaintiffs, and the proposed Class by failing to prudently and loyally manage the Plan's investment options by, *inter alia*, selecting and retaining investment options in the Plan despite the high cost of the funds in relation to other comparable investments, failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan, failing to investigate separate accounts and/or collective trusts as alternatives to mutual funds, even though they generally provide the same investment management services at a lower cost and failing to monitor or control the grossly-excessive compensation paid for recordkeeping services, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).  Am. Cmplt.,[4] ¶¶136-41.

In Count II, Plaintiffs alleged that Brenntag and the Board Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration of the Plan's assets was delegated.  *Id*., at ¶¶143-48.

Defendants expressed their intention to file a motion to dismiss the Amended Complaint but the parties began to explore the possibility of settlement before the filing deadline.  On April 7, 2020, the parties filed a Joint Stipulated Motion for Stay Pending Mediation. (Doc. 20.)  The Court granted that motion the same day (Doc. 21.), and, on May 19, 2020, the parties participated in a mediation before David Geronemus, a neutral, third-party private mediator with experience mediating ERISA class actions.  On that date, the parties agreed to a settlement in principle and, over the next two months negotiated the specific terms of the Settlement Agreement.

**B.    Investigation of Claims and Discovery**

---

[4] "Am. Cmplt." refers to the Amended Complaint (Doc. 17).

Several months prior to instituting an action, Plaintiffs' Counsel conducted an extensive investigation into the underlying merits of the action which included the review of public records regarding the assets held by the Plan and Brenntag's voluminous response to Plaintiff's request for disclosure of documents pursuant to §104(b) of ERISA, as well as the retention of an expert to assess the management of the Plan. Additionally, Class Counsel researched and analyzed relevant case law to determine potential legal claims.

Prior to the filing of the Amended Complaint, Plaintiffs' counsel engaged in discussions with counsel for Defendants, which resulted in Defendants providing additional information relevant to Plaintiffs' claims. As noted above, the information obtained was incorporated into the Amended Complaint. Following the filing of the Amended Complaint, both Plaintiffs and Defendants served their Rule 26(a)(1) Disclosures, in which they identified relevant witnesses and categories of documents.

### C.  Settlement Negotiations

After reviewing all of the relevant information, Plaintiffs determined realistic maximum potential damages to the Plan to be in excess of $15 million. Gyandoh Decl., ¶9. This figure is based in large part on what Plaintiffs allege the Plan would have earned if it were invested in the best performing similar funds in the marketplace that were available instead of being invested in the funds in the Plan during the Class Period. *Id.*

The mediation in this Action was conducted via Zoom on May 19, 2020 and the negotiations were certainly arm's-length. Gyandoh Decl., ¶8. David Geronemus from JAMS, a mediator with extensive experience in ERISA and other complex litigation matters, assisted the parties at arriving at a settlement in principle, settling this matter for $2,300,000.00. Gyandoh Decl., ¶10. Several months of negotiations followed to finalize the terms of the Settlement

4

Agreement, inclusive of exhibits, which was executed on September 21, 2020. *Id.* Based on the aforementioned negotiations and exchange of information both before and during the mediation, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests. Gyandoh Decl., ¶13.

Throughout the litigation and settlement negotiation processes, Class Counsel has been cognizant of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Gyandoh Decl., ¶11. This, combined with the arm's-length nature of the negotiation of the Settlement Agreement by the experienced advocates for the Parties, strongly support the conclusion the proposed Settlement is fair, reasonable, and adequate.

### D.     The Proposed Settlement

The Settlement provides that the Defendants will pay $2,300,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[5] In exchange, the Plaintiffs and the Plan will dismiss their claims, as set forth more fully in the Settlement Agreement. The Settlement Agreement also sets forth the proposed Notice Plan to Settlement Class Members and provides for the payment of attorneys' fees and Plaintiffs' Case Contribution Awards, both of which are subject to Court approval.

### E.     Reasons for the Settlement

Plaintiffs entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of the claims, which is based on Class Counsel's extensive experience with ERISA litigation, the investigation performed in connection with filing the Complaint and the Amended Complaint, and the facts obtained during the course of litigation. Gyandoh Decl.,

---

[5] The Plan of Allocation is attached to the Settlement Agreement as Exhibit B. The Plan of Allocation is premised on calculating a Plan participant's pro rata distribution based upon the individual's balances in the Plan during the Class Period up to June 30, 2020. In essence, the Plan of Allocation calculates the dollars lost in each individual's account as a result of alleged excessive Recordkeeping fees and imprudent investment offerings.

¶¶3-4, 11.   Class Counsel, in negotiating the proposed Settlement, considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors, which were debated during the settlement process.  *Id*., at ¶¶9, 11-12.

Defendants certainly would argue in a dispositive motion and/or at trial that, among other things, they employed a prudent process to select and retain investment options in the Plan despite the high cost of the funds in relation to other comparable investments, that they did not fail to investigate the availability of lower-cost share classes of certain mutual funds in the Plan, that they did not fail to investigate separate accounts and/or collective trusts as alternatives to mutual funds, that they did not fail to monitor or control the compensation paid for recordkeeping services, and that all decisions were an appropriate discharge of their fiduciary duties of loyalty and prudence.

In sum, based upon the extensive investigation both before and during the litigation, the analysis of the risks inherent in continuing litigation and establishing liability and damages, and the likelihood of appeals associated with any trial verdict, Plaintiffs' counsel supports the proposed Settlement and its certain and immediate benefit to the Settlement Class Members. Gyandoh Decl., ¶¶4, 9, 11, 13.   Without this Settlement, there is no assurance that Plaintiffs would prevail if litigation were to continue – much less that Settlement Class Members would recover more than the Class Settlement Amount.

## G.   Proposed Timetable

The Parties request the Court schedule a Fairness Hearing at least 120 days after the Court's order granting preliminary approval of the settlement. This timing will ensure that the Fairness Hearing takes place no earlier than ninety days from the date notice is mailed pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"), and sixty days

from the mailing of the Class Notice.[6]  The Parties have consented to a generalized schedule as

follows, assuming the Court preliminarily approves the Settlement.

- *Class Notice* will be mailed and published to the settlement website by no later than thirty days after entry of a Preliminary Approval Order;
- The filing of briefs in support of final approval of the *Settlement* and in support of *Class Counsel's* petition for attorneys' fees, litigation costs and *Case Contribution Awards* to the *Named Plaintiffs* shall be filed no later than thirty days before the *Fairness Hearing*;
- Any objections to the *Settlement* must be filed thirty days before the *Fairness Hearing*;
- Any responses to objections, and supplemental briefs in support of the *Settlement*, must be filed seven days before the *Fairness Hearing*.

The above dates are set forth in the Preliminary Approval Order, ¶¶ 6-12.

## III.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR BOTH PRELIMINARY AND FINAL APPROVAL

### A.   The Governing Law

The approval of a class action settlement depends on "whether the settlement is fair,

adequate, and reasonable."  *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir.

1983). The Third Circuit has emphasized that in determining the fairness of a proposed

settlement, "the district court acts as a fiduciary who must serve as a guardian of the rights of

absent class members."  *In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,

55 F.3d 768, 785 (3d Cir. 1995) ("*GMC*").  Although the Court must scrutinize the Settlement

Agreement for fairness, "there is an overriding public interest in settling class action litigation,

and it should therefore be encouraged."  *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516,

535 (3d Cir. 2004) ("*Warfarin*").

"Review of a proposed class action settlement involves a two-step process:  preliminary

approval and a subsequent fairness hearing."  *Harry M. v. PA Dept. of Public Welfare*, 2013 WL

---

[6]  The CAFA Notice must be sent no later than ten days from the filing of the Settlement Agreement with the Court which will be October 1, 2020.

1386286, at *1 (M.D. Pa. Apr. 4, 2013).  At the preliminary approval stage, courts must apply the *GMC* test to determine whether:  "(1) the negotiations occurred at arm's length;  (2) there was sufficient discovery;  (3) the proponents of the settlement are experienced in similar litigation;  and (4) only a small fraction of the class objected."  *GMC*, 55 F.3d at 785.  If these factors are satisfied, the settlement is presumed to be fair.  *Id.*  At the final approval stage, the district court must determine whether "the proposed settlement is 'fair, reasonable and adequate.'"  *In re: New Jersey Tax Sales Certification Antitrust Litig.*, 750 Fed.Appx 73, 77 ("*NJ Tax Sales*"), quoting FED. R. CIV. P. 23(e).  To make this determination, courts in this circuit employ the more rigorous nine factor test set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d. Cir. 1975), which requires analysis of the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risk of litigation.

*Girsh*, 521 F.2d at 157;  *see also NJ Tax Sales*, 750 Fed.Appx. 73, 77 (3d Cir. 2018);  *In re: Flonase Antitrust Litig.*, 951 F.Supp.2d 739, 742 (E.D.Pa. 2013) ("*Flonase*").

Amendments to Rule 23 also took effect on December 1, 2018.  Among other things, the amendments set forth standards under Rule 23(e)(1)(B)(i)-(ii) that a district court must ensure are met prior to a grant of preliminary approval of a proposed settlement.  It provides that that preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."  FED. R. CIV. P. 23(e)(1(B)(i).  Rule 23(e)(2), in turn, now specifies the factors to be considered in determining whether a settlement merits final approval:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3);[7] and

(D)     the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Here, the Settlement easily satisfies all of the above standards.

### B.     The Settlement Satisfies the *GMC* Test, Underscoring its Fairness

As discussed in greater detail *supra*, Section II.C, the Settlement negotiations were certainly arm's-length, readily satisfying the first prong of the *GMC* test. The Parties engaged in mediation followed by several months of settlement-related email and telephonic negotiations before arriving at an agreement as to the Settlement terms.

Next, the Court must determine whether there was sufficient discovery before the settlement. *GMC*, 55 F.3d at 785. The basis behind the second prong of the *GMC* test is that Parties should have an "adequate appreciation" of the merits in settling a case. *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) ("*Prudential*"),

---

[7] Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

citing *GMC,* 55 F.3d at 813.  Although the Defendants had not yet filed a motion to dismiss the

Amended Complaint, the informal discovery efforts in this Action were substantial, as discussed

*supra*, Section II.B.  From both the independent research and informal discovery productions,

Plaintiffs' counsel, in consultation with Plaintiffs' expert witness, were able to assess the

strengths and weaknesses of Plaintiffs' claims, as well as calculate Class-wide damages.  Based

upon the above, there is no doubt that both Plaintiffs and Defendants adequately appreciated the

strengths and weaknesses of the claims and defenses asserted in this Action.  *See, e.g.*, *In re:*

*Merck & Co. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010)

(finding that for purposes of final approval of a settlement in an analogous case, the review of a

significant number of documents and the process of having "conducted informal discovery,

obtained information from named Plaintiffs in this matter, consulted expert witnesses, retained

private investigators and prepared relevant legal documents in response to a motion to dismiss"

gave "Class Counsel [] an adequate appreciation of the facts in this matter before proceeding

with settlement negotiations" and thus "[t]his factor weigh[ed] in favor of settlement approval.").

The second *GMC* prong is thus amply satisfied.

The fourth prong of the *GMC* test, and the final factor that is fully assessable at this

time,[8] requires the Court to gauge the experience of Plaintiffs' counsel in similar litigation.  As

discussed in greater detail *infra*, Section V.C, Class Counsel has successfully handled dozens of

ERISA breach of fiduciary duty class actions (including cases involving defined contribution

---

[8]  Under the third prong of the *GMC* test, the fairness of a proposed settlement is also supported where there is only
a small fraction of objections by Settlement Class members.  While this factor is indisputably critical to a fairness
analysis, it is premature to assess this factor at this stage, as notice to proposed Class members has not yet been
provided.  As a sister district court reasoned, "[t]he only practical way to ascertain the overall level of objection to
the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out
of the settlement class or object to its terms at the Final Fairness Hearing."   *In re: M3 Power Razor Sys. Mktg. &*
*Sales Prac. Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010).  If the Court preliminarily approves the Settlement and
authorizes notice to be sent to the Settlement Class, Plaintiffs' Counsel will address any opposition to the Settlement
in the final approval papers in advance of the *Fairness Hearing*.

retirement plans' investment lineups), has been litigating exclusively ERISA fiduciary breach lawsuits for 15 years, and currently serves as lead counsel in several ERISA fiduciary breach actions across the country.   Gyandoh Decl., ¶12.   The vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind.

### C.    The Third Circuit's *Girsh* Factors also are Satisfied

Although satisfaction of the *GMC* test is sufficient for preliminary approval, the Settlement also meets the more exacting approval standard articulated by the Third Circuit in *Girsh* and in Rule 23(e)(2).   It should be noted that a court may approve a settlement even if it does not find that all of these factors militate in favor of approval.   *NJ Tax Sales*, 750 Fed. Appx. at 77, citing *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017) (affirming settlement approval where some factors did not weigh in favor of settlement).

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'"   *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*"), quoting *Warfarin*, 391 F.3d at 535-36 (internal quotation omitted);   *GMC*, 55 F.3d at 812.   Here, the probable costs of continued litigation with respect to both time and money are high.   The Settlement in this Action comes at an opportune time given that, if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.

While significant informal document productions have occurred, considerable additional formal discovery, both paper and testimonial, would be required before the case would be trial ready, and there would be voluminous briefing ahead in the absence of the proposed Settlement.

As noted *supra*, the Action was stayed by this Court on April 7, 2020, so the Parties could pursue mediation.  Absent this Settlement, the Parties would delve into substantial discovery, including numerous depositions (the Plaintiffs, the Defendants and their Rule 30b)(6) designee(s), other third-party witnesses as well as those of liability and damages experts) as well as briefing related to a motion to dismiss the Amended Complaint, contested class certification and summary judgment.  Moreover, a trial in this Action would be arduous given the complex factual and legal issues relevant to Defendants' decisions and Plaintiffs' arguments as to why such conduct was imprudent and constituted breaches of Defendants' fiduciary duties under ERISA.  Further, even if Plaintiffs prevailed at trial it would likely be years before any putative Settlement Class Member received any benefit in light of the likely appeals to follow.

Significant here, too, is the fact that "ERISA class actions based on the same theories as the present matter involve a complex and rapidly evolving area of law."  *In re: Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012) ("*Schering-Plough Enhance*");  *see also Smith v. Krispy Kreme Doughnut Corp.*, No. 05-cv-00187, 2007 WL 119157, at *2 (N.D.N.C. Jan. 10, 2007) (recognizing that "ERISA is a highly complex and quickly-evolving area of the law" as a factor supporting the proposed settlement).

The Third Circuit has recognized that a significant delay in recovery if a case proceeds to trial favors settlement approval, *see, e.g.*, *Warfarin*, 391 F.3d at 536, and the District of New Jersey has acknowledged that this reality favored final approval of a settlement in an analogous matter, reasoning that:

> [t]his litigation has been ongoing for more than two years.  Undoubtedly, without settlement, the continued costs and time required to proceed through discovery, pre-trial matters, trial and post-trial matters would be great in this multi-district action.  Additionally, there will necessarily be significant delay in recovery if this case is tried.  In contrast, the settlement provides immediate recovery.

*In re: Merck & Co., Inc., Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010).

Thus, the "probable costs [] of continued litigation" with respect to both time and money are very high and militate in favor of approval of the settlement.  On balance, the immediate and guaranteed benefit to the Settlement Class provided by the Settlement here outweighs the uncertainty of continued, costly, and time-consuming litigation.

### 2.    The Reaction of the Class to the Settlement

As noted in footnote 8, *supra*, analysis of this factor is premature as notice of the proposed Settlement will be disseminated to the Settlement Class only after this Court grants preliminary approval of the Settlement.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

As with the third prong of the *GMC* test, pursuant to the third *Girsh* factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken.  *GMC*, 55 F.3d at 813.  "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *NFL*, 821 F.3d at 438-39 (3d Cir. 2016), quoting *Warfarin*, 391 F.3d at 537 (internal quotation omitted);  *see also In re: Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010) ("*Schering-Plough/Merck*"). The discovery analyzed in this matter encompasses "informal" discovery, including discovery and analysis from third parties, such as experts.

As discussed in Section II.B, *supra*, and in connection with the second prong of the *GMC* test, the totality of the Parties' discovery efforts favors approval of the Settlement.

### 4.    The Risks of Establishing Liability and Damages

As this Court has recognized, the fourth and fifth *Girsh* factors, which require examination of the risks of establishing liability and damages respectively, are "closely related" and therefore are properly addressed together. *Flonase*, 951 F.Supp.2d at 744. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them," *GMC*, 55 F.3d at 814, and these inquiries "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319; *see also In re: Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001), quoting *GMC*, 55 F.3d at 816.

In this complex ERISA Action, Plaintiffs would proffer their liability and damages experts, which would undoubtedly be countered by Defendants' proffered experts. Ultimately, a battle of experts presenting differing damages calculations would ensue and the factfinder "would therefore be faced with competing expert opinions representing very different damage estimates[,] . . . adding further uncertainty." *In re: Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Although a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable. As the United States District Court for the District of New Jersey noted when analyzing the reasonableness of the settlement of ERISA breach of fiduciary duty allegations, "[r]isk is inherent in litigation. In this case, the risks of litigation are great because Plaintiffs' claims involve complex and contested questions of law and fact." *In re: Merck & Co., Inc., Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *8 (D.N.J. Feb. 9, 2010). Given the similarly complex and contested questions of law and fact here, the same great risks of a trial on the merits

are inherent in this Action.  Thus, the fourth and fifth *Girsch* factors both militate in favor of the Settlement.

**5.      The Risks of Maintaining the Class Action through Trial**

The sixth *Girsch* factor requires the Court to examine the risks of maintaining the class-action through trial due to the fact that "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits."   *GMC*, 55 F.3d at 817.   "Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *Id.*

The Third Circuit has referred to ERISA derivative actions brought on behalf of a plan and its participants, such as the instant Action, as a "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class."   *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("*Schering-Plough ERISA*").   However, Plaintiffs had yet to move for class certification at the time the Parties agreed to the proposed Settlement. Despite the Third Circuit's favorable treatment of ERISA breach of fiduciary duty class actions, Plaintiffs would still have to establish that the proposed Class satisfied all of the requirements of Rule 23(a) as well as the requirements of at least one subsection of Rule 23(b), and expect that Defendants would vigorously oppose Plaintiffs at every step of the motion process.  This factor, too, militates in favor of settlement, as the settlement eliminates the risks of not being able to establish and maintain the class through trial.

**6.      The Ability of the Defendants to Withstand a Greater Judgment**

The seventh *Girsh* factor requires the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537-38. The Third Circuit has noted that, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015), quoting *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D. Pa. 2011). Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re: Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

While Brenntag could likely withstand a judgment in an amount larger than the Settlement amount, the risks and expenses attendant to continuing this litigation, combined with the immediacy of the benefit to Settlement Class members, easily outweigh this factor.

7. **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation**

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth [*Girsch*] factor)." *GMC*, 55 F.3d at 806. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin,* 391 F.3d at 538, citing *Prudential*, 148 F.3d at 322; *see also Flonase*, 951 F.Supp.2d

at 745.  As the Third Circuit has explained, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation;  after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *GMC*, 55 F.3d at 806; *Sullivan*, 667 F.3d at 324.

To assess the reasonableness of a settlement in a case such as this, seeking primarily monetary relief, a court should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement."  *NFL,* 821 F.3d at 440, quoting *Prudential*, 148 F.3d at 322 (internal quotation omitted).  In determining the range of recovery in this Action, at one extreme is the possibility that Defendants might prevail on one or more of their legal or factual arguments to defeat liability entirely.  While Plaintiffs are confident of the strength of the claims asserted, they recognize that this possibility cannot be discounted completely.  But even assuming liability is established, several variables would affect the determination of the actual amount of recoverable damages.  Key among these is the determination of the date on which Defendants' alleged failure to alter the investment offerings and/or obtain lower recordkeeping fees constitute a breach of fiduciary duty (the "breach date").  The Amended Complaint alleged that Defendants knew or should have known that the investment offerings and/or excessive lower recordkeeping fees were imprudent by January 8, 2014 (which Plaintiffs assert could result in damages of as much as $15 million) Am. Cmplt., ¶6, but there is no guarantee this date would ultimately prevail or that Plaintiffs otherwise would be successful in establishing this claimed amount in damages.  Further, Plaintiffs' ability to sustain their burden of proof at trial admittedly would be an uphill battle.  The use of a later breach date and/or a determination that one of the challenged decision-

making processes was prudent could result in a recovery well below the $2,300,000.00 Settlement amount.

Given this wide range of potential damage outcomes at trial and the uncertainty of the Plans' actual losses, the $2,300,000.00 monetary Settlement is fair and reasonable.[9]

### 8.   The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be Satisfied

Rule 23(e)(1)(B)(i), as amended, provides that that preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."   FED. R. CIV. P. 23(e)(1(B)(i).   Rule 23(e)(2) now primarily combines portions of the *GMC* test with several of the *Girsh* factors.   As a result, because the instant Settlement satisfies the *GMC* test and the *Girsh* factors, the requirements of Rule 23(e)(2) are substantially met for purposes of both preliminary and final approval.   The three factors that are not encompassed by the *GMC* test and the *Girsh* factors that the Court is to consider when determining whether to grant **final** approval are:  (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims";  (2) "the terms of any proposed award of attorney's fees, including timing of payment";  and (3) whether "the proposal treats class members equitably relative to each other."   FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).[10]

As detailed *infra*, Section IV, the proposed Notice Plan submitted by the Parties comports with due process.   This, combined with the Plan of Allocation submitted by the Parties, satisfies the requirement of Rule 23(e)(2)(C)(ii).   Additionally, a proposed maximum of 33 1/3% of the Settlement Amount in attorneys' fees is contained in the proposed Class Notice submitted by the

---

[9]  Plaintiffs will analyze this factor further in connection with the filing of the motion for final approval of the Settlement.

[10]  There are no agreements other than the Settlement Agreement, thus FED. R. CIV. P. 23(e)(2)(c)(iv) is irrelevant.

Parties.  This amount is in line with analogous awards in ERISA class action cases and will likely be approved by the Court, so the requirement of Rule 23(e)(2)(C)(ii) will likely be met. *See McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment that awarded the class counsel attorneys' fees of 1/3 of the settlement fund); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.,* 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).  Finally, the Plan of Allocation submitted by the parties clearly treats class members equitably relative to each other, thereby satisfying the requirement of Rule 23(e)(2)(D).  Here, the Court can easily determine that it is likely to grant final approval under Rule 23(e)(2), so preliminary approval is appropriate under Rule 23(e)(1)(B)(i).

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.    The Proposed Notice Plan Meets the Requirements of Due Process

In addition to preliminarily approving the Settlement Agreement, the Court must also approve the proposed means of notifying class members.  FED. R. CIV. P. 23(c)(2);  *see also Harry M.*, 2013 WL 1386286, at *2.  "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action."  *Harry M.*, 2013 WL 1386286, at *2.  In order to satisfy due process considerations, notice to Settlement Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950);  *Glaberson v. Comcast Corp.*, No. CIV.A. 03-6604, 2014 WL 7008539, at *6 (E.D. Pa. Dec. 12, 2014), quoting

*In re: Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000);  *see also Harry M.*, 2013 WL 1386286, at *2.

As set forth below, Plaintiffs' proposed means of providing Notice to the Settlement Class readily satisfies this standard as well as the mandates of due process.  The combination of direct mail and publication of the *Notice* on a dedicated website should cause actual notice to reach a very high percentage of affected Plan participants and beneficiaries.

### B.    Description of the Notice Plan

As an initial matter, Class Counsel has asked the Court to approve the selection of JND Legal Administration as the Settlement Administrator for the Settlement.  *See* Preliminary Approval Order, ¶ 8.  JND is an industry leader in class action settlement administration and has successfully handled dozens of class settlements.  *See* https://www.jndla.com/class-action-administration.

The Notice Plan, which is contained in the Settlement Agreement, includes multiple components designed to reach the largest number of Settlement Class members possible.  First, the Class Notice, attached as Exhibit A to the Settlement Agreement, will be sent via First Class mail, postage prepaid, to the last known address of each Settlement Class Member within (30) days of the Court's order granting preliminary approval of the Settlement.  SA,[11] Art. 2, §§2.2.4, 2.4, 8.2.2.  Additionally, by that same date, the Class Notice, along with other litigation-related documents such as a list of frequently asked questions and the Settlement Agreement with all of its Exhibits, will be posted on a dedicated Settlement website established by Plaintiffs' counsel. The Class Notice also provides contact information for Class Counsel.  Class Notice, p. 2.  Class Counsel also will establish and monitor a dedicated, toll-free Settlement telephone number with an Interactive Voice Response system which will have answers to frequently asked questions and

---

[11] "SA" refers to the Settlement Agreement.

also provide to Settlement Class Members the opportunity to leave a voicemail for Class Counsel should they have any additional questions regarding the Settlement.

The Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).  The proposed notices describe in plain English: (i) the terms and operations of the Settlement;  (ii) the nature and extent of the release of claims; (iii) the maximum attorneys' fees and Plaintiffs' Case Contribution Awards that may be sought; (iv) the procedure and timing for objecting to the Settlement;  and (v) the date and place for the Fairness Hearing.  Numerous district courts within this Circuit have approved as fair similar notices and/or notice plans.  *See, e.g.*, *In re: Merck & Co. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *2 (D.N.J. February 9, 2010);  *Schering-Plough Enhance*, 2013 WL 5505744, at *19 (D.N.J. Oct. 1, 2013).[12]

## V.      CLASS CERTIFICATION IS APPROPRIATE

At the preliminary approval stage, when the court has not previously certified a class, it may preliminarily certify a class for purposes of providing notice, leaving the final certification decision for the subsequent final Fairness Hearing.  *In re: Imprelis Herbicide Marketing, Sales Practices and Products Liability Litig.*, 2013 WL 504857, at *3 (E.D. Pa. Feb. 12, 2013) ("*Imprelis*").  In determining whether an action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a court should preliminarily determine whether the proposed class satisfies the numerosity, commonality, typicality and adequacy of representation criteria set forth in Rule 23(a), as well as at least one of the subsections of Rule 23(b).[13]  *Amchem*

---

[12]  Indeed, individual notice by First Class mail alone has been recognized by this Court as a manner of delivery of notice that comport with due process.  *See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*, No., 2009 WL 2137224, at *7 (E.D. Pa. July 16, 2009).  Plaintiffs' proposed Notice Plan goes well beyond individual notice by First Class mail, further underscoring its fairness and appropriateness.

[13]  In the settlement context, the requirements of Rule 23, particularly those designed to protect absentees by blocking unwarranted or overbroad class definitions, remain undiluted, even heightened.  *In re: Pet Food Products Liability Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) ("*Pet Food*").

*Prods. v. Windsor*, 521 U.S. 591 (1997); *Imprelis*, 2013 WL 504857, at *3, citing *Manual for Complex Litigation*, § 21.632 (4th Ed. 2004).   In this matter, the proposed Settlement Class satisfies each of the prerequisites of Rule 23(a) as well as at least one of the alternate requirements of Rule 23(b).   Accordingly, Plaintiffs request the following proposed Settlement Class be preliminarily certified for settlement purposes:

> All Persons (except Defendants and their beneficiaries) who are or were participants in or beneficiaries (including alternate payees) of the Brenntag USA Profit Sharing Plan at any time between January 8, 2014 through the date of the Preliminary Approval Order.

Precedent, including that from within the Third Circuit, is clear that these types of ERISA § 502(a)(2) breach of fiduciary duty claims are well-suited for class status as they are brought, by definition and in practice, on behalf of retirement plans and affected participants.  *See, e.g.*, *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009);  *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *Schering-Plough Enhance*, 2012 WL 1964451 (D.N.J. Dec. 16, 2010);  *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010).

### A.    The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.    Numerosity

When there "are thousands of participants in [a] plan in any given year", the court "should make common sense assumptions regarding numerosity."  *In re: Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) ("*Ikon I*") (numerosity satisfied in analogous ERISA breach of fiduciary duty case where there were thousands of plan participants); *see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001).  Here, there are more than

4,500,[14] which is more than sufficient to find that joinder of all parties is impracticable, thereby satisfying Rule 23(a)(1).  *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (generally more than 40 is sufficient).

### 2. Commonality

"Rule 23(a)(2)'s commonality requirement requires that the putative class members 'share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018), quoting *Warfarin*, 391 F.3d at 528;  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)  ("A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'").   Examples are when class members challenge the same conduct of the defendants, or when plaintiffs show class members suffered the same injury.  *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. June 26, 2012), citing *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 348 (2011).  In fact, "[a] finding of commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification,'" *In re: AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002) (internal citation and quotation omitted), and, "[b]ecause the requirement may be satisfied by a single common issue, it is easily met . . . ." *Baby Neal*, 43 F.3d at 56, citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir. 1987);  *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir.1984));  *see also Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 474-75 (E.D. Pa. 2007) (finding commonality in an analogous action).

---

[14]   According to the 2018 Form 5500 submission for the Plan, as of December 31, 2018, the Plan had 4,755 participants with account balances.

The same is true for the matter currently before the Court.  The overarching questions of law and fact applicable to all Settlement Class Members are whether the Defendants breached fiduciary duties owed to the Plan and its participants by: selecting and retaining investment options in the Plan despite the high cost of the funds in relation to other comparable investments; failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan;  failing to investigate separate accounts and/or collective trusts as alternatives to mutual funds, even though they generally provide the same investment management services at a lower cost;  and failing to monitor or control the compensation paid for recordkeeping services.  These queries are vital to each and every potential Settlement Class Member during the Class Period and, in of themselves, are sufficient to meet the commonality requirement of Rule 23(a)(2). *See Wal-Mart*, 564 U.S. at 355;  *Schering-Plough Enhance*, 2012 WL 1964451, at \*3 (D.N.J. May 31, 2012) (where the complaint alleged breach of fiduciary duties owed under ERISA, the determination involves issues of law and fact that are identical for all class members thereby satisfying the commonality requirement).  However, this Action also presents many common questions of law and fact, applicable to all members of the Settlement Class, which predominate over any questions affecting solely individual potential members, including:  (1) whether Defendants were fiduciaries of the Plan; (2) whether the Plan and the Participants were injured by such breaches; and (3) whether the Class is entitled to damages.  As deemed appropriate by other district court decisions in ERISA cases, "[a]ll of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants."  *Moore v. Simpson*, 1997 WL 570769, at \*4 (N.D. Ill. Sept. 10, 1997);  *see also Ikon I*, 191 F.R.D. at 463-65.  Consequently, Plaintiffs demonstrate a

"level of commonality more than sufficient under Rule 23(a)(2)." *In re: Honeywell Int'l Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002).

### 3.    Typicality

The "typicality requirement [contained in Rule 23(a)(3)] is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Warfarin*, 391 F.3d at 531 (internal quotation marks omitted).  This requirement is satisfied here because the claims of the Named Plaintiffs arise from and challenge the same events or course of conduct that give rise to the claims of other Settlement Class Members and are based on the same legal theory. *See Baby Neal*, 43 F.3d at 58 ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."); *Ikon I*, 191 F.R.D. at 463; *Prudential*, 148 F.3d at 311-12 (holding that typicality was satisfied by allegedly fraudulent scheme applying to all class members, even if different illegal sales practices were used on different beneficiaries). Typicality is routinely satisfied in putative class actions brought for breaches of fiduciary duty under ERISA. *See, e.g.*, *Schering-Plough Enhance*, 2012 WL 1964451, at *3 (D.N.J. May 31, 2012) (finding typicality satisfied because the claims of plaintiffs and the class members are based on the violation of duties owed under ERISA in the same course of conduct); *Mehling*, 246 F.R.D. at 475 (holding, when certifying settlement class in ERISA breach of fiduciary duty case, that typicality requirement was met where breach of fiduciary duty claims challenged same allegedly unlawful conduct); *Ikon I*, 191 F.R.D. at 465 (same); *Stanford*, 263 F.R.D. at 167 (same).

Plaintiffs' claims are typical of those of the Settlement Class as all were participants in the Plan during the Class Period.  As a result, Plaintiffs and all participants in the Plan, *i.e.*, the Settlement Class Members, sustained an economic loss arising out of Defendants' breaches of fiduciary duty in violation of ERISA, a statute that explicitly states that §502(a)(2) claims are brought on behalf of retirement plans for plan-wide relief.  *See In re: Honeywell Int'l ERISA Litig.*, 2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004).  Accordingly, since the interests of the Named Plaintiffs are aligned with those of the Settlement Class Members, typicality is satisfied. *Schering-Plough/Merck*, 2010 WL 1257722, at *7 (D.N.J. March 26, 2010).

### 4.     Adequacy

"The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members:  it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley*, 287 F.R.D. at 309;  *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).  This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted).  Here both prongs of the adequacy test are met.

The core of the analysis of the first prong is whether the named plaintiffs have interests antagonistic to those of the class.  FED. R. CIV. P. 23(a)(4);  *see also New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).  "Class representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *In re: Budeprion XL Marketing & Sales Litig.*, 2012 WL 2527021, at *7 (E.D. Pa. July 2, 2012),

citing *Pet Food*, 629 F.3d at 343.  Here, Named Plaintiffs have no interests antagonistic to those of the absent Settlement Class Members as demonstrated by the fact that, ultimately, Named Plaintiffs seek to establish that Defendants breached their fiduciary duties by continuing to offer inferior investment alternatives and pay excessive recordkeeping fees which caused the Plan and Settlement Class Members an economic loss.  As such, each member of the Settlement Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plan as a result of the conduct of the Defendants.  This is proof positive that the interests of Named Plaintiffs in this Action are perfectly aligned with the interests of the absent class members, thereby meeting the first adequacy prong.

The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4), based upon the factors set forth in Rule 23(g).  *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  This prong, discussed *infra* in Section V.C, clearly demonstrates that Plaintiffs' counsel is qualified to represent the Class.

### B.      The Proposed Class Meets the Requirements of Rule 23(b)(1)

In addition to demonstrating that the requirements of Rule 23(a) are met, Plaintiffs must also establish that at least one subsection of Rule 23(b)(1) is satisfied.  Here, certification is proper under Rule 23(b)(1), which states that a class may be certified if:

> (1) prosecuting of separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

27

FED. R. CIV. P. 23(b)(1).  Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon I*, 191 F.R.D. at 466.  Certification under both sections of Rule 23(b)(1) is common in ERISA breach of fiduciary duty cases because of the defendants' alleged "unitary treatment" of the individual members of the proposed class.  *Id.* (internal citation omitted);  *see also* FED. R. CIV. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating that certification under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

However, courts most often grant class certification of ERISA claims under Rule 23(b)(1)(B).  *See, e.g.*, *Mehling*, 246 F.R.D. at 467 (certifying the class pursuant to Rule 23(b)(1)(B) in an ERISA fiduciary duty case);  *Ikon I*, 191 F.R.D. at 466 (granting class certification under Rule 26(b)(1)(B) where, because "of the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.");  *Rankin*, 220 F.R.D. at 523 (certifying a class in breach of fiduciary duty action under Rule 23(b)(1)(A) and (B), in part, because "failure to certify a class could expose defendants to multiple lawsuits and risk inconsistent decisions.").

Here, the Complaint alleges breaches of fiduciary duties under ERISA.  Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985).  Thus, actions for breaches of fiduciary duty under ERISA are, by law, representative actions which, if successful, will cause Defendants to be obligated to provide relief applicable to all participants in the Plan.  *See Schering Plough ERISA*, 589 F.3d at 604 ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts

have held.");  *see also Kolar v. Rite Aid Corp.*, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003).  ("It would seem that ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.")

Given the unique "group-based" relief offered under ERISA for violations of fiduciary duties owed to participants in covered benefit plans, an action such as this is a textbook case for class treatment under Rule 23(b)(1)(B).  Thus, the proposed Settlement Class satisfies Rule 23(b)(1)'s requirements for settlement purposes. "First, the Class may be certified under Rule 23(b)(1)(B) because prosecuting separate actions would create a risk of adjudications that 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.'" *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *5 (E.D. Pa. Aug. 31, 2018), quoting FED. R. CIV. P. 23(b)(1)(B).  "'[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.'" *Id.*, quoting *Ikon I.*, 191 F.R.D. at 466;  *see also Mehling*, 246 F.R.D. at 476 ("Because Plaintiffs are alleging a breach of fiduciary duty, any finding as to Defendants' alleged breach in an individual suit will affect the interests of Plan participants not parties to the suit.");  *Furstenau v. AT&T Corp.*, 2004 WL 5582592, at *4 (D.N.J. Sept. 3, 2004) ("Plaintiff seeks plan-wide relief, where success necessarily results in plan-wide relief and failure to prove breach of fiduciary duty would necessarily preclude actions by other plan participants.  If this Court did not certify the class, then Defendants would be exposed to multiple lawsuits and risk inconsistent decisions.").  Thus, given the nature of this case and the relief sought on behalf of the Class, the proposed Settlement Class meets the requirements of FED. R. CIV. P. 23(b)(1).[15]

---

[15]  In the alternative, certification under subsection (b)(1)(A) is also appropriate.  In fact, it is not uncommon for courts to certify ERISA class actions under both subsections of Rule 23(b)(1).  *See, e.g.*, *Schering-Plough Enhance*, 2012 WL 1964451, at *3 (D.N.J. May 31, 2012) (finding certification appropriate under Rule 23(b)(1)(A) or (B)).  A number of district courts recognize the nature of this type of case, which challenges defendants' plan-wide

### C.     Capozzi Adler, P.C., and Mark K. Gyandoh, Esquire, Should Be Appointed as Class Counsel

Federal Rule 23(g) specifies that, unless a statute provides otherwise, a court that certifies a class must appoint Class Counsel, and that an attorney appointed to serve as Class Counsel "must 'fairly and adequately represent the interests of the class.'"  *Donovan v. St. Joseph County Sheriff*, 2012 WL 1601314, at *8 (N.D. Ind. May 3, 2012), quoting FED. R. CIV. P. 23(g)(4). Rule 23(g) directs consideration of:   "(i) the work counsel has done in identifying or investigating potential claims in the action;  (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;  (iii) counsel's knowledge of the applicable law;  and (iv) the resources that counsel will commit to representing the class." *In re:  Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 262 (E.D. Pa. 2012), citing FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).  The court may also consider any other matter pertinent to whether Class Counsel can fairly and adequately represent the interests of the class.  *Id*., citing *Sheinberg*, 606 F.3d at 132-33.

Plaintiffs retained attorneys that are highly qualified, experienced, and able to litigate this matter.  Capozzi Adler, P.C., and Mark K. Gyandoh, Esquire, Plaintiffs' Counsel in this Action, have substantial experience litigating similar ERISA class action cases along with other complex litigation and are well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement.   Mark K. Gyandoh, Esquire, Chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and his partner Donald R. Reavey, Esquire, are highly qualified ERISA class action attorneys and unequivocally recommend this Settlement. While at his prior firm, Mark K. Gyandoh, was named Lead Counsel or Co-Lead Counsel in

---

conduct, making this result particularly appropriate.  *See, e.g., In re: Merck & Co., Inc. Sec., Der. & ERISA Litig.*, 2009 WL 331426, at *12 (certifying class under Rule 23(b)(1)(A) and noting the strong the risk of establishing inconsistent standards under ERISA given that the "central element of the prudence claims is not an individual matter…").  Accordingly, the Court may also certify the Settlement Class under Rule 23(b)(1)(A).

numerous breach of fiduciary duty class actions in this District and across the nation.  Gyandoh Decl., ¶12.  Recently, Mr. Gyandoh and Capozzi Adler were appointed interim class counsel in *Bilello, et al., v. Estee Lauder, Inc., et al.,* No. 1:20-cv-04770-JMF (S.D.N.Y.) (ECF 11), which is an analogous breach of fiduciary duty action.

Throughout the litigation Class Counsel has used its experience and access to resources to investigate and litigate Plaintiffs' underlying allegations, which ultimately led to the Settlement in this Action.  Class Counsel have more than a decade and a half of experience in complex class actions and recommend this Settlement as the best solution for Settlement Class Members.  The retention of highly qualified counsel, coupled with the alignment of interests between Named Plaintiffs and the Settlement Class Members, satisfies the requirements of Rules 23(a)(4) and 23(g).

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully move this Court to grant their Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, and Scheduling of a Fairness Hearing.

DATED:  September 21, 2020                Respectfully submitted,

*/s/ Mark K. Gyandoh*
**CAPOZZI ADLER, P.C.**
2933 North Front Street
Harrisburg, PA 17110
Telephone:  (717) 233-4101
Facsimile:  (717) 233-4103


Donald R. Reavey, Esquire
**CAPOZZI ADLER, P.C.**
2933 North Front Street
Harrisburg, PA 17110
Telephone:  (717) 233-4101
Facsimile:  (717) 233-4103

*Class Counsel*

31

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on September 21, 2020, I caused the foregoing Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, and Scheduling of a Fairness Hearing to be filed with the Clerk of the Court via the CM/ECF system, which will deliver notification of filing to all counsel of record.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh